WALTER M. ELSWICK, Judge,
The claimant, Harold R. Harper, accompanied by his wife and brother-in-law, was driving on state route 250 a short distance after leaving the town of Hundred, on August 7, 1941, when he came to a portion of the road that was being tarred *13 and slagged by state road employees. Before coming to the tarred portion of the road he passed, as the evidence shows, a sign “fresh oil” and a sign “men working” with a state road metal flag on top of same. And before entering the tarred portion of the road he came to a spreader box used in spreading road materials where a flagman was standing and who flagged him to a stop or slow down. It would appear from the evidence that this spreader box was located a distance of from 300 feet to 500 feet back from a narrow bridge in the direction of his travel. (Darrah record p. 100, Wiedebusch record p. 109). There was also a sign “one way bridge” on the right side of the road near where the spreader box was standing. (Weidebusch record p. 109, Phillips record p. 60).
There is a conflict in the testimony as to whether the flagman indicated by a signal for him to drive on, but at any rate claimant continued to drive on past the flagman and spreader box with his car in high gear until he reached the tarred portion of the road where he continued on in high gear as he testified, at the rate of about fifteen miles per hour, to a point where he skidded and collided head-on into another car coming from the opposite direction, owned and operated by John Grandon, at the end of said bridge, the impact of the two cars causing the damages complained of. Grandon testified that the Harper car, in his opinion, was being driven at a speed of from twenty-five to thirty miles per hour when it hit his car.
The Grandon car was being driven over the bridge and had been slowed down to almost a stop at the time of the collision. Tar had been spread on the right side of the road from this bridge some distance toward the spreader box and the Harper car was then being driven on Harper’s left side of the road which would have been in the pathway of the Grandon car.
This collision occurred while the sun was shining in the afternoon with clear vision and an unobstructed view of the attendant circumstances. One witness (O’Leary record p 88) testified that one could have seen the Grandon car coming as far back as one tenth of a mile or better. Harper could have *14 seen the Grandon car before it came to the bridge. (Phillips record p. 61). The claimant beyond question was put on notice that the road was being tarred and that due care and caution should be exercised in traveling thereon, as well as to keep a lookout for cars approaching from the opposite direction.
Soon after the collision occurred the claimant admitted that the collision was due to his fault and agreed to settle the damages to the Grandon car. (Record pp. 18? 73, 82, 83 and 85).
There was evidence adduced that there was a berm on each side of the road of sufficient width to have enabled the two cars to pass practically all the distance back from the bridge to the slagged portion of the road. The Harper car was pushed out of the road onto the right berm of the road after the collision. (Darrah record p. 104). Only one side of the main roadway between the spreader box and bridge had been tarred. (Record pp. 57, 64, 73, 100). The road was twenty feet wide and tarred portion eight feet wide. (Record p. 88).
While there is some conflict from the testimony as to the width of the berm on each side of the main traveled portion of the road and as to whether or not the claimant could have driven outside of the tarred portion and either come to a stop or passed the other car, it appears from the evidence that the claimant could have either come to a stop when he saw, or should have seen, the approaching car or pulled over on the berm of the road and stopped to let the other car pass; that under all the circumstances in the case the claimant was not exercising ordinary care and caution in keeping his car under control when his car skidded on the tarred portion of the road, causing the damages incurred. He owed this duty not only to himself, but to fellow travelers and employees who may be upon the highway. It appears from the evidence that the state road employees were exercising due care and caution in the performance of their work, as well as to warn travelers of the hazards of travel attending the work being done, and that the work was being done in a careful manner, and as was usual in the neighborhood; that the collision occurred by reason of the *15 claimant’s failure to exercise due care and caution to keep his car under control required tinder the attendant circumstances of the case. The failure of the claimant to exercise such care was the direct and proximate cause of the collision.
The state is not an insurer as to the condition of its roads and highways, nor as to the acts of its agents and employees. The claimant was not found to be entitled to recover damages based upon the evidence, and no award is recommended by the court.